UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

GREAT LAKES INSURANCE SE,

    Plaintiff,

                                  CASE NO. 18-CV-60705-BB

vs.

THOMAS AARVIK, *et al*,

    Defendants.

_____/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT
IN DISPUTE IN SUPPORT MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE, by and through its undersigned attorneys, and pursuant to and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7.5 of the Local Rules of the United States District Court for the Southern District of Florida, file this its Statement of Material Facts Not in Dispute submitted in support of Plaintiff's Motion for Summary Judgment, and further thereto would respectfully state as follows:

    1.    The Plaintiff in the instant action is a UK-based marine insurance company which agreed to issue a Temporary Binder affording Hull & Machinery coverage on a vessel which for insurance purposes was described as a 1993 80 ft Baia motor yacht named "OUR NAUTI DREAM." The said vessel was owned by the Defendants Thomas and Cheryl Aarvik, and would have been insured for an agreed value of $250,000.00 (*see*, Temporary Binder and wording for Policy No. CSRYP/164007, attached as Exhibit "A" in support of Plaintiff's motion for summary judgment.

    2.    As noted at the second page of Exhibit "A," the Defendant Rick Obey was listed on the temporary Binder as a Loss Payee.

3. The instant action is one in which the Plaintiff has commenced a declaratory judgment action, invoking this Court's admiralty jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure, asking this Court to rule that the policy of marine insurance affords no coverage for an incident which is alleged to have occurred on or about January 1 2018. It was as a result of this incident that the Defendants filed a claim with the Plaintiff contending that the insured vessel had been damaged and seeking payment in the amount required to effect full and complete repairs to the said vessel.

4. Plaintiff's Complaint for Declaratory Judgment asserts four (4) separate and distinct Causes of Action. However, the Plaintiff's Motion for Summary Judgment, will be seeking a ruling from this Court on the basis of the First , Second, Fourth, Fifth and Sixth of these Causes of Action.

5. In the First Cause of Action it is Plaintiff's contention that its policy of marine insurance affords no coverage for the damage sustained by the Aarviks' vessel due to the fact that coverage would exist only where the facts demonstrate that there occurred "an accidental physical loss."

6. In the Second Cause of Action I tis Plaintiff's contention that he policy is void due to the Defendants' breach of the express warranty of seaworthiness set forth in the policy.

7. In the Fourth Cause of Action it is Plaintiff's contention that any damage sustained by the insured vessel's engines, mechanical and electrical parts, and the costs of repairing the insured vessel's engines, mechanical and electrical parts is excluded due to a clear and unambiguous exclusion in the policy for losses to "engines, mechanical and electrical parts unless caused by an

2

accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire."

8. In the Fifth Cause of Action it is Plaintiff's contention that the policy is void, and in fact never incepted because the Defendants failed to comply with the provision in the policy warranting that there was an existing survey of the vessel and that any such survey would be received by the Plaintiff within 30 days of the effective date of the insuring agreement.

9. In the Sixth Caused of Action it is Plaintiff's contention that the Defendant Rick Obey is what is termed a "simple loss payee" with no greater rights to recovery under the policy that those enjoyed by the Defendants Thomas and Cheryl Aarvik.

10. The undisputed material facts which have been adduced in the course of the Plaintiff's post-incident investigation, and now completed at the conclusion of discovery establish that Defendants were and remain resident of California but began looking in South Florida for a private pleasure vessel to purchase in early 2017 (Depo. of T. Aarvik, p. 45). Mr. Aarvik purchased the vessel from Rick Obey, who is a yacht broker based in Fort Lauderdale (Depo. of T. Aarvik, p. 47, 51-52).

11. The purchase price of the vessel was $225,000.00 (Depo. of T. Aarvik, p. 56). With $50,000.00 of the purchase price financed by Mr. Obey, the loss payee on the policy (Depo. of T. Aarvik, p. 57, 60).

12. Attached hereto as Exhibit "B" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the Bill of Sale for the vessel, dated December 18, 2017, identified as such by Mr. Aarvik in his deposition (Depo. of Aarvik, p. 62).

13. In order to begin the process of obtaining an insurance policy on his newly purchased vessel, Mr. Aarvik contacted a California-based insurance broker called American Marine Insurance. (Depo. of T. Aarvik, p. 80). Mr. Aarvik spoke with an agent at American Marine, providing her with certain information that she requested from him (*Id.*). This initial information was contained in a yacht Application form which the agent at American Marine in turn passed on to a London-based Lloyd's broker called Arthur J. Gallagher (UK) Ltd.

14. Attached hereto as Exhibit "C" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the three (3) page Yacht Application form referred to herein produced by American Marine Insurance in response to a subpoena served upon that entity by counsel for Mr. Aarvik.

15. On the first page of Exhibit "C", there appear the hand-written words "There is a current survey – Pending."

16. The Yacht Application form is dated November 20, 2017, and it was sent as an attachment to an email from the agent at American Marine Insurance to another agent at the London-based Lloyd's broker, Arthur J. Gallagher. Attached hereto as Exhibit "D" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the November 20, 2017 email sent by the retail agent/broker to the Lloyd's, surplus lines broker, which states, in pertinent part:

> There is a pre-purchase survey but he said he has it in California and will forward as soon as he makes it there. The vessel will be kept at a private dock on Canal Street, 33306. He will provide the full address as soon as he confirms.

4

17. Two (2) days later, on November 22, 2017, the London-based Lloyd's broker sent an email to Concept Special Risks Ltd., which acts as the Plaintiff's Marine Underwriting Manager, located in West Yorkshire in the United Kingdom, seeking a Quote on the risk of insuring the vessel that had been purchased by Mr. and Mrs. Aarvik. Attached hereto as Exhibit "E" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of that email dated November 22, 2017 from the Lloyd's broker to the Plaintiff's Marine Underwriting Manager, which states in pertinent part:

> There is a pre-purchase survey but he said he has it in California and will forward as soon as he makes it there. The vessel will be kept at a private dock on Canal Street, 33306. He will provide the full address as soon as he confirms.

18. Mr. Aarvik claims that he never informed anybody at American Marine Insurance that he had in his possession a pre-purchase survey, or that such a documents was back in California, or that he intended to retrieve that pre-purchase survey and provide it to the brokers acting on his behalf. (Depo. of T. Aarvik, pp. 85-86).

19. In response to receipt of Exhibit "E," Plaintiff's Underwriting Manager emailed a Quotation back to the Lloyd's broker. Attached hereto as Exhibit "F" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the Quotation provided on November 22, 2017 by Concept Special Risks Ltd. Regarding the Defendants' vessel. Exhibit "F" states, in pertinent part:

> The Above Subject To:   Satisfactory application form, valuation, out-of-water survey, Concept Letter of Compliance with Survey Recommendations, hurricane plan

20. Attached hereto as Exhibit "G" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of an email dated December 14, 2017 from the retail broker at American Marine Insurance to the Lloyd's broker in London, which states in pertinent part that "[Mr. Aarvik] is asking for 30 days to comply with the haul out survey and the recommendations compliance forrm."

21. Attached hereto as Exhibit "H" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of an email dated December 18, 2017 from the Lloyd's broker to an underwriter at Concept Special Risks Ltd. Which states, in pertinent part;

> The client would like to bind on your original quotation.
>
> They will provide requested docs asap and have asked for 30 days to comply with the haul out and follow up recommendations.

22. Following receipt of the email of December 18, 2017, Exhibit "H," *supra*, Concept Special Risks Ltd. issued its Temporary Binder for what would be Policy No. CSRYP/164007. Attached hereto as Exhibit "I" in support of Plaintiff's Motion for Summary Judgment is a true and co0rect copy of the Temporary Binder issued by Plaintiff on December 19, 2017.

23. The Temporary Binder dated December 19, 2017 notes at the second page "Temporary Binder Pending… Current Out of Water Condition and Valuation Survey."

24. Attached hereto as Exhibit "J" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of an email dated December 19, 2017 from the Defendants' Lloyd's broker to the retail broker in California, which states in pertinent part, "Please take careful

6

note of the information required on the second page as follows:… Current Out of Water Condition and Valuation Survey."

25. Attached hereto as Exhibit "K" in support of Plaintiff's Motion for summary judgment is a true and correct copy of an email dated December 19, 2017 addressed to Mr. Aarvik from his retail broker, forwarding to the Defendant the Temporary Binder issued by the Plaintiff, which, and which states in pertinent part: "Please take careful note of the information required on the second page as follows:… Current Out of Water Condition and Valuation Survey."

26. At the request of the brokers acting on behalf of the Defendants, coverage was sought for Rick Obey as a loss payee in the policy to be issued (Depo. of B.A. Usher, p. 54) and as a result of that request a second Temporary Binder was issued, dated December 22, 2017.

27. Attached hereto as Exhibit "L" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the Temporary Binder for Policy No. CSRYP/164007 dated December 22, 2017.

28. Just as before, the Temporary Binder dated December 19, 2017 notes at the second page "Temporary Binder Pending… Current Out of Water Condition and Valuation Survey."

29. On the morning of January 1, 2018, the vessel owned by the Aarviks and insured by the Plaintiff was discovered to be taking on water at the dock where it had been brought for certain work to be performed, located at 3641 W. State Road 84 in Fort Lauderdale.

30. On or about January 18, 2018, the Lloyd's broker acting on behalf of the Defendants submitted a post-incident survey of the vessel, describing the damage sustained as a result of the sinking at the dock. Attached hereto as Exhibit "M" in support if Plaintiff's Motion for Summary

7

Judgment is a true and correct copy of the post-incident survey submitted to the Plaintiff by the Defendants. There was never a pre-loss or a pre-binding survey in existence.

31.     Attached hereto as Exhibit "N" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of a string of emails passing between the Defendants' brokers in the aftermath of the submission to the Plaintiff of Exhibit "M," a post-incident, or post-loss survey of the vessel.

32.     As set forth in an email which is part of Exhibit "N," on January 18, 2018, retail broker Danielle DeFeo emailed to Lloyd's broker Oliver Madley, "Attached please find the survey for the above insured."

33.     Later that same date, Madley responded to DeFeo, "Thanks for the below, however underwriters have commented that this is a post loss survey. A pre-purchase survey is mentioned in the application form, please could that survey be submitted for underwriters review."

34.     In an email dated January 24, 2018, the Lloyd's broker Madley states the following:

> I have received the following message from CSR in relation to the claim:
>
> "Rather alarmingly we have received an email from this assured stating that there never was a current out of water with recommendations and that he made it quite clear with the "underwriter." They also state that they thought they had until the 18th January to have such a survey carried out.
>
> This is entirely contrary to the pre bind representations made and I wonder whether you can cast any light on this?
>
> The temp bind was made on the understanding that the assured would produce the survey that was already in existence, it didn't give them until the 18th January to have one carried out."

8

> Assuming by the "underwriter," the client means us, had you received any update on this?
>
> ***It was my understanding from the very first email on this account that there was a pre-purchase survey and we were going to receive it shortly.***
>
> Please do not mention this to the client yet until we can analyze our information properly, but let me know as soon as possible.

35. Responding again later that same date, January 24, 2018, the Lloyd's broker Madley sent an email to DeFeo at the retail broker, stating:

> From the mails I have seen, the email that was referenced from the Assured "Stating that there never was a current out of water survey with recommend-dations and that he made it quite clear with the "underwriter," **had not been sent to me**.
>
> I assume this was not sent to you in that case? I will speak with our claims team if this is correct.
>
> The following sentence seems key to me: "There is a pre-purchase survey but he said he has it in California and will forward as soon as he makes it there."

36. From the emails exchanged between the brokers, it is clear that the Lloyd's broker was never informed about the fact that there was in fact never at any time a current out of water survey, or that the Defendants intended to provide a survey to be done after the date of the bind. It must be equally clear, therefore, that the Plaintiff was never informed and that the Plaintiff could never have approved the Defendants' submission of the post-loss survey on January 18, 2018.

37. At his deposition, the Managing Director and Senior Underwriter at Concept Special Risks Ltd., Mr. B.A. Usher, was asked whether the post-incident survey dated January 17, 2018 satisfied the requirement for a current out-of-water survey as noted on the Temporary Binders:

> Q:   That document that you're holding – looking at, it says: Report of Survey.

9

>  It's dated January 17, 2018. Does that document—did that document satisfy the outstanding request for a current out-of-water survey that is referenced in several of the earlier exhibits and on the binders.

A: No.

Q: Why not?

A: Because it's post-incident. Whereas the survey we were requiring was the existing out-of-water pre-purchase survey that we'd been advised it was in existence at the time we offered our quotation.

Q: Counsel asked you about whether some type of extension was granted in – on or about December 22nd or some date back in December, a 30-day extension relating back from December 18th to January 18th to provide a survey. Didn't you give this insured the 30- 30 days to provide some type of survey done during that period, during that interval?

A: No. We provided him 30 days to provide the survey to us that was already in existence.

Q: Did anybody, Mr. Madley or anybody at the surplus lines broker, indicate to you that there was not a survey in existence?

A: No.

Q: Had they done so, what would your response have been?

> Had you been told by anybody at the surplus lines broker or anybody at American Marine, anybody, that there was not , in fact, a survey in existence at the time of the submission of the application, at the time of the issuance of the binders, what, if any, action, what, if any, response would there have been from you?

A:  Our normal standard procedure in the event that there is no existing current survey, because we would then be unaware of what the condition of the vessel is, we would amend the coverage to be port risk, laid up ashore, until the survey has been conducted and the recommendations had been complied with prior to relaunch.

> Q: And that would have been your response had you been told clearly that there was no current out-of-water survey in existence and that Mr. Aarvik was seeking additional time to have a survey conducted; is that what you're saying?
>
> A: Yes. I mean, that would have been our standard procedure. And I have to say, this is – is a slightly different scenario because it's not as though they'd been silent on the existence of a pre-purchase survey.
>
> Q: Hadn't been silent?
>
> A: No. They specifically told us that there was a pre-purchase survey, but they required time to produce it because the survey was in California and the insured was in Florida.
>
> Q: And who communicated that information to Concept?
>
> A: A.J. Gallagher.
>
> Q: The surplus lines broker?
>
> A: Correct. No, the Lloyd's broker.

(Depo. of B.A. Usher, pp. 69-72).

38. On the morning of January 1, 2018, the vessel owned by the Aarviks and insured by the Plaintiff was discovered to be taking on water at the dock where it had been brought for certain work to be performed, located at 3641 W. State Road 84 in Fort Lauderdale. Doug Wager of Wager & Associates, was the Pensacola-based adjuster assigned by Plaintiff to investigate and report on the facts pertaining top he January 1, 2018 incident at the dock.

39. Attached hereto as Exhibit "O" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the email sent by Mr. Aarvik to Jessica Boudreaux at Wager & Associates on January 4, 2018 describing the January 1st incident in which his vessel simply sank at the dock.

40. Attached hereto as Exhibit "P" in support of Plaintiff's Motion for Summary Judgment is a true and correct copy of the Preliminary Advice provided to Plaintiff by Mr. Wager, in which Wager states:

> Based on our initial findings, the vessel was connected to dock-side water supply and a hose became disconnected at a Tee-fitting which allowed fresh water to enter the interior of the vessel. Further survey found the positive wire to the aft bilge pump was disconnected rendering the pump useless. As the vessel began to sit lower on her lines, seawater began flooding rapidly into the interior as a result of the port engine exhaust system being disconnected and left unsealed.

41. Filed in support of Plaintiff's Motion for Summary Judgment are sworn affidavits from Mr. Wager and from Michael Grant, the later the local, South Florida-based surveyor assigned by Wager to conduct the damage survey of the vessel following the sinking at the dock.

42. Both Wager and Grant agree that the referenced hose came loose, allowing fresh water to flood the vessel, as a result of the unexplained failure of a clamp, which in turn was never found.

43. Both Wager and Grant agree that the failure of the bilge pumps to work properly allowed water to enter the continue entering the vessel, and that a properly functioning bulge pump should have been able to easily handle the flow of fresh water in the machinery space.

44. Both Wager and Grant agree that there was no event which occurred on January 1, 2018 which could meet the definition of an "accident" or an "external event."

45. Both Wager and Grant agree that the damage to the vessel's engines, electrical systems, wiring, appliances, etc., would be in excess of the $250,000.00 agreed value for which the vessel was insured under the terms of the Temporary Binder issued by Concept Special Risks Ltd.

46. Plaintiff's Policy No. CSRYP/164007states, in pertinent part:

   2. <u>INSURING AGREEMENT</u>

   This is a legally binding insurance contract between you and us, incorporating in full the application signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

   3. <u>Coverage A, Hull, Machinery, Equipment and Dinghy</u>

   If a sum insured is shown for Section "A" of the insuring agreement declarations page, we provide coverage for ***<u>accidental physical loss</u>*** (emphasis added) of, or damage to a scheduled vessel which occurs during the period of this insuring agreement...

   ******
   <u>Exclusions to Coverage A</u>

   Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by the insuring agreement:

   ******

   r)   Losses to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike or fire.

   ******

   <u>9.  General Conditions & Warranties</u>

   ******
   b)   It is warranted that the scheduled vessel is seaworthy at all times during the duration of this insuring agreement. Breach

13

>	of this warranty will void this insuring agreement from its inception.
>
>	` ******
>
> r)	Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by is within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials…
>
>	******

## 12.    CHOICE OF LAW

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

Dated:	November 12, 2018
	Fort Lauderdale, Florida

					GOLDMAN & HELLMAN
					Attorneys for Plaintiff
					8751 W. Broward Boulevard
					Suite 404
					Fort Lauderdale, Florida 33324
					Tel (954)356-0460
					Fax (954) 832-0878

					By:   Steven E. Goldman
					        STEVEN E. GOLDMAN, ESQ.
					        FLA. BAR NO. 345210

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 12, 2018 I electronically filed the foregoing using the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of record:

>GOLDMAN & HELLMAN
>Attorneys for Plaintiff
>8751 W. Broward Boulevard
>Suite 404
>Fort Lauderdale, Florida 33324
>Tel (954)356-0460
>Fax (954) 832-0878
>
>By:   Steven E. Goldman
>        STEVEN E. GOLDMAN, ESQ.
>        FLA. BAR NO. 345210