# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-60705-BLOOM/Valle

GREAT LAKES INSURANCE SE,

      Plaintiff,

v.

THOMAS AARVIK, *et al.*,

      Defendants.

_____/

## <u>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

**THIS CAUSE** is before the Court upon Plaintiff Great Lakes Insurance SE's ("Great Lakes") Motion for Summary Judgment, ECF Nos. [61] - [63] ("Great Lakes's Motion"), and Defendants Thomas Aarvik's and Cheryl Aarvik's ("the Aarviks") Motion for Summary Judgment, ECF No. [51], ("the Aarviks's Motion") (collectively, the "Motions"). The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised. For the reasons that follow, Great Lakes's Motion is granted and the Aarviks's Motion is denied.

## I.    BACKGROUND

On January 30, 2018, Great Lakes filed its Complaint against the Aarviks seeking declaratory judgment that a policy of marine insurance affords no coverage for an incident which occurred on January 1, 2018. *See* ECF No. [1]. Great Lakes is a marine insurance company. ECF No. [62] at ¶ 1.[1] The Aarviks are residents of the State of California who sought an insurance policy on their vessel from Defendant. ECF No. [62] at ¶ 10; ECF No. [51] at ¶¶ 1, 3.

---

[1] To the extent that Plaintiff or Defendants did not dispute portions of Defendant or Plaintiffs' Statement of Material Facts, the Court cites directly to Plaintiff's or Defendants' Statements for ease of reference.

Mr. Aarvik sent a yacht application form to insurance-broker, American Marine Insurance (the "Retail Broker"), to begin the process of obtaining an insurance policy on a 1993 80 ft. Baia Panther motor yacht (the "Vessel"). ECF No. [62] at ¶ 13; ECF No. [51] at ¶ 14. The yacht application form, dated November 20, 2017, stated in hand-written words: "There is a current survey – Pending." ECF No. [62] at ¶¶ 15-16. On November 20, 2017, the Retail Broker emailed the yacht application form to Arthur Gallagher (UK) Ltd. (the "Lloyd's Broker"), along with a message stating: "There is a pre-purchase survey but [Mr. Aarvik] said he has it in California and will forward as soon as he makes it there." *Id.* at ¶ 16. On November 22, 2017, the Lloyd's Broker sent an email to Great Lakes's marine underwriting manager, Concept Special Risks Ltd. ("Great Lakes's Underwriter"), with the identical message concerning the pre-purchase survey. *Id.* at ¶ 17.

On November 22, 2017, Great Lakes issued a quotation for insurance coverage to the Aarviks. ECF No. [51] at ¶ 1. The quotation states that it is subject to receipt of a "Satisfactory application form, valuation, **out-of-water survey**, Concept Letter of Compliance with Survey Recommendations, hurricane plan." *Id.* at ¶ 2 (emphasis added). On December 18, 2018, Great Lakes received an email from the Lloyd's Broker relaying that the Aarviks were requesting to bind coverage pursuant to the November 22, 2017 quotation and requesting 30 days to comply with the haul out and follow up recommendations. *Id.* at ¶ 3; ECF No. [62] at ¶ 21. On December 19, 2017, Great Lakes issued a Temporary Binder, providing hull coverage to the Aarviks. ECF No. [51] at ¶ 4. Paragraph (r) of the Temporary Binder states:

> Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that

all such recommendations are completed prior to any loss giving rise to any claim hereunder…

ECF No. [62-1] at 14. The Temporary Binder also provides:

Temporary Binder Pending:

…

-Current Out of Water Condition and Valuation Survey

…

**Warning: Unless the above detailed documents/information are supplied in full by the date detailed on this temporary binder, coverage is void from inception.**

ECF No. [51] at ¶ 5 (emphasis in original). The "date detailed" on the temporary binder is January 18, 2018. *Id.* at ¶ 6. There was never a pre-loss or a pre-binding survey in existence. *Id.* at ¶ 30.

On January 1, 2018, the Vessel began taking on water and ultimately submerged until she rested on the bottom. *Id.* at ¶ 17. On or before January 18, 2018, Great Lakes's Underwriter received a post-incident survey dated January 17, 2018. ECF No. [57-1] at 68:4-11; 69:3-23. According to the deposition testimony of Mr. B.A. Usher as corporate representative for Great Lakes's Underwriter, the survey Great Lakes received did not satisfy the request for a current out-of-water survey because it is post-incident, whereas "the survey we were requiring was the existing out-of-water pre-purchase survey that we'd been advised it [sic] was in existence at the time we offered out quotation." ECF No. [62] at ¶ 37. Great Lakes provided the Aarviks "30 days to provide the survey to us that was already in existence" due to the Lloyd's Broker's representation that the Aarviks required additional time to produce the survey because "the survey was in California and the insured was in Florida." *Id.* Mr. Usher responded "no" when asked whether "anybody…indicate[d] to you that there was not a survey in existence." *Id.* In an

email dated January 24, 2018, the Lloyd's Broker stated to the Retail Broker: "It was my understanding from the very first email on this account that there was a pre-purchase survey and we were going to receive it shortly." *Id.* at ¶ 34.

## II.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations.  *See* Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.  The Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some

metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence in the record supports the uncontroverted material facts that the movant has proposed. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## III. DISCUSSION

Great Lakes brings six causes of action for declaratory judgment pertaining to the coverage owed pursuant to the Temporary Binder for damage to the Vessel resulting from the January 1, 2018 incident. Great Lakes's Fifth Cause of Action seeks a declaration that the Aarvik's breach of the Temporary Binder's express warranty that there was an existing out of water survey of the Vessel and that such survey would be received within 30 days of the effective date of the agreement voids the Temporary Binder and relieves Great Lakes from any and all liability to the Aarviks under the coverage afforded pursuant to said policy. Because the Court concludes that the Aarviks breached the express warranty and Great Lakes is relieved from

any liability under the Temporary Binder, it need not address Great Lakes's other requests for declaratory relief, or Great Lakes's and the Aarviks' other grounds for summary judgment.

The dispute in this case concerns a Temporary Binder issued for a vessel for a marine insurance policy, thereby giving rise to federal admiralty jurisdiction. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.,* 561 F.3d 1181, 1184 (11th Cir. 2009); *All Underwriters v. Weisberg,* 222 F.3d 1309, 1312 (11th Cir. 2000). "The interpretation of a marine insurance policy is a legal matter for a court." *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1250 (S.D. Fla. 2010) (citing *Gulf Tampa Drydock Co. v. Great Atlantic Co.,* 757 F.2d 1172, 1174 (11th Cir. 1985)).

### a. Choice of Law

The Temporary Binder contains a "Choice of Law" provision, reading as follows:

> "It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York."

ECF No. [62-1] at 17. Great Lakes argues that the Choice of Law clause requires that the Court apply federal maritime law to the issue of the effect of the the Aarviks' breach of warranty, or else New York State law applies in the alternative. The Aarviks do not contest this point. As such, the Court applies New York law to the substantive arguments raised by the parties.

Courts routinely apply the choice of law clause specifying admiralty law or New York law in marine insurance policies issued by Great Lakes. *See Rosin*, 757 F. Supp. 2d at 1251 (S.D. Fla. 2010) (collecting cases). Here, because there is no entrenched federal admiralty precedent concerning the effect of a breach of an express warranty in a marine insurance policy,

New York law will apply. *See id.*, at 1257. In *Rosin*, the court set forth the relevant New York

law concerning the effect of a breach of an express warranty:

> New York law has long provided that "the breach of an express warranty [in a marine insurance policy], whether material to the risk or not, whether a loss happens through the breach or not, absolutely determines the policy and the assured forfeits his rights under it." *Cogswell v. Chubb,* 1 A.D. 93, 36 N.Y.S. 1076, 1077 (1st Dept.1896) (navigation limit warranty), *aff'd,* 157 N.Y. 709, 53 N.E. 1124 (1899). As New York's Court of Appeals has explained, an express warranty in a marine insurance policy "must be literally complied with, and that noncompliance forbids recovery, regardless of whether the omission had a causal relation to the loss." *See Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.,* 298 N.Y. 280, 82 N.E.2d 577, 577 (1948) (no coverage due to breach of warranty that vessel, when tied up, would be in charge of a competent watchman who would conduct inspections of vessel at frequent intervals). *See also Levine v. Aetna Ins. Co.,* 139 F.2d 217, 218 (2d Cir.1943) (barring coverage where there was breach of warranty that vessel would be equipped with a searchlight); *Kron v. Hanover Fire Ins. Co.,* 15 N.Y.2d 521, 254 N.Y.S.2d 119, 202 N.E.2d 563–64 (1964) (applying literal compliance rule to bar coverage where insured breached warranty that gasoline would not be kept aboard tug).

*Id.* at 1257-58.

**b. Waiver**

Great Lakes argues that the Aarviks failed to comply with the warranty (Paragraph (r)) in

the Temporary Binder that a survey of the Vessel existed prior to the effective date of the

agreement, and failed to provide said survey to Plaintiff by January 18, 2018. The Aarviks do

not dispute that no survey existed prior to the effective date of the insurance. However, the

Aarviks counter that Great Lakes waived any right to enforce Paragraph (r) because Great Lakes

had actual knowledge that no survey was in existence at the time. *See* ECF No. [51] at 16-18.

The Aarviks also argue that Great Lakes waived the requirements of Paragraph (r), relying on the

first clause of that provision, stating: "[u]nless we agree in writing to the contrary…"

Under New York law, "[w]aiver 'is the voluntary and intentional relinquishment of a

contract right.'" *Si Meat Vill., Inc. v. Amguard Ins. Co.*, 208 F. Supp. 3d 490, 492–93 (E.D.N.Y.

2016) (quoting *Stassa v. Stassa*, 999 N.Y.S.2d 116 (2014). As such, waiver "requires 'full

knowledge of the facts upon which the existence of the right depends.'" *Id.* (quoting *Amrep*

*Corp. v. American Home Assurance Co.*, 440 N.Y.S.2d 244, 247 (1981)).

In *Si Meat*, plaintiff sought recovery from its insurer for property damage and lost income

due to a fire. *Id.* at 491. The policy at issue required plaintiff to maintain an automatic fire

alarm on the premises. *Id.* at 492. The application for coverage, submitted by an insurance

broker, represented that there was a fire alarm on the premises. *Id.* Additionally, during

inspection of the subject property, an independent contractor was advised by the principal for

plaintiff that there was a working fire alarm on premises. *Id.* Yet, the parties agreed that in

actuality there was no fire alarm at the premises. *Id.* In granting defendant's motion for

summary judgment on plaintiff's claim for coverage, the Court held that "there was no waiver"

because defendant did not have "actual knowledge that there was no fire alarm at the premises."

*Id.* at 493. Moreover, defendant's "failure to learn the true state of affairs is not an adequate

substitute [for actual knowledge]." *Id.*

Similarly, here, the evidence before the Court is that Great Lakes was advised that a

survey existed predating the subject incident and was not informed prior to the incident that no

such survey existed. Specifically, before issuance of the Temporary Binder, the Lloyd's Broker

conveyed to Great Lakes that a survey existed but was physically located in California. The

Aarviks have failed to present any evidence that Great Lakes knew that no survey existed when it

issued the Temporary Binder, or at any time before the incident occurred. The Aarviks argue

that the request for 30 days to supply the survey necessarily imparted the knowledge to Great

Lakes that no survey existed. But according to the unrebutted testimony of Great Lakes's

Underwriter's corporate representative, Mr. Usher, in requesting the extension, the Lloyd's

Broker advised that the Aarviks required additional time to provide the survey because it was located in California and the Aarviks were in Florida. Consistent with Mr. Usher's testimony, the Lloyd's Broker who requested the extension believed, based upon the the Aarviks' representation, that a pre-purchase survey existed. Mr. Usher further testified that Great Lakes permitted the Aarviks 30 days to provide the survey that Great Lakes had been told existed in California. Thus, the Aarviks' hollow argument does not present a genuine issue of fact from which a reasonable juror could conclude that Great Lakes had actual knowledge that no survey existed. In the absence of any evidence that Great Lakes knew that a survey predating the subject incident did not exist, this argument fails.

The Court is also unpersuaded by the Aarviks' second argument, that Great Lakes waived the requirements of Paragraph (r) based on the language of the provision itself. Paragraph (r) provides:

> Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by is within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder…

The Aarviks do not dispute that Great Lakes requested a survey of the Vessel, nor could they, as it is explicitly requested in the Temporary Binder. Thus, unless the Parties agreed in writing to the contrary, it is warranted that such a survey was in existence prior to the effective date of the insurance. The Aarviks do not point to any specific language that would constitute an agreement "to the contrary," but contend that the "issuance of the temporary binder, a written instrument, constitutes a waiver of the requirement contained in Paragraph (r) of the General Conditions and Warranties …" ECF No. [71] at 4. However, critically, no provision within the

Temporary Binder contemplates, much less agrees, that a survey predating the effective date of the insurance does not exist. That the Temporary Binder permits the Aarviks until January 18, 2018 to "suppl[y]" the survey, ECF No. [62-1] at 3, does not negate the warranty that the survey already existed.

Accordingly, because the Aarvik's failed to comply with an express warranty, they are prevented from recovering under the Temporary Binder for losses arising from the subject incident.

## IV. CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment, **ECF No. [61],** is **GRANTED** as set forth above.

2. Defendants' Motion for Summary Judgment, **ECF No. [51]**, is **DENIED.**

3. The Clerk of Court shall **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 15th day of January, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

10